JDG:CMM
F. #2015R01489

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 08 2015 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -

HARENDRA SINGH,
    also known as "H. Singh,"

                Defendant.

– – – – – – – – – – – – – –X

I N D I C T M E N T

Cr. No. **C R   15   450**
(T. 18, U.S.C., §§ 286, 371, 666(a)(2),
981(a)(1)(C), 982(a)(2)(A), 1040(a)(2),
1040(b)(3), 1343, 1346, 1349, 1512(c)(1),
1512(c)(2), 2 and 3551; T. 21, U.S.C.,
§ 853(p); T. 26, U.S.C., § 7212(a); T. 28,
U.S.C., § 2461(c))

**HURLEY, J.**
LOCKE, M. J.

THE GRAND JURY CHARGES:

### INTRODUCTION TO ALL COUNTS

At all times relevant to this Indictment, unless otherwise indicated:

#### The Town of Oyster Bay

1.    The Town of Oyster Bay (the "TOB") was a municipality in Nassau County, New York ("Nassau County") comprised of 18 villages and 18 hamlets. The TOB awarded contracts to provide services to the public, including but not limited to concessions at the TOB's municipal beaches and golf courses. In or about and between 2010 and 2014, the TOB received in excess of $10,000 each calendar year under federal programs involving grants and other forms of federal assistance.

2

<u>The Defendant and His Business Entities</u>

2.      The defendant HARENDRA SINGH, also known as "H. Singh," was a resident of Syosset, New York.

3.      SINGH, a local businessman and restaurateur, owned and operated approximately thirty businesses (collectively, the "SINGH Entities"), located primarily in Nassau County.   The majority of the SINGH Entities, which operated restaurants and food concessions, were jointly owned by SINGH and his wife.   One of the SINGH Entities was known as "H.R. Singletons," a restaurant located on the main ground floor of a commercial building located at 150 Hicksville Road, Bethpage, New York ("150 Hicksville Road"). SINGH largely operated the SINGH Entities from basement offices located at 150 Hicksville Road.

4.      The SINGH Entities were awarded agreements with the TOB, including concession agreements to operate various food concessions within the TOB.

<u>SINGH's Criminal Schemes</u>

I.      <u>Under-Reporting of Gross Sales and Payroll to Federal Tax Authorities</u>

5.      SINGH engaged in schemes to fraudulently under-report to federal tax authorities the true amount of money the SINGH Entities earned and the wages he paid his workers, thereby dramatically lowering the federal taxes SINGH and the SINGH Entities owed and paid.

6.      Specifically, SINGH substantially under-reported to the federal government the amount of gross receipts seven SINGH Entities earned.[1]   In total, for tax years 2009 and 2012, SINGH failed to report approximately $10,000,000 in gross receipts of those seven SINGH Entities.   In addition, from 2010 through 2014, SINGH concealed approximately $7,091,331 of wages paid to employees of those seven SINGH Entities, plus an additional SINGH Entity, the Singh Hospitality Group, fraudulently depriving the federal government of payroll taxes.

A.      Under-Reporting of Gross Receipts

7.      The Internal Revenue Service ("IRS"), an agency within the U.S. Department of the Treasury, was responsible for administering and enforcing federal revenue laws and regulations regarding ascertainment, computation, assessment and collection of taxes owed to the United States by its citizens and residents.

8.      In order to accurately assess and collect taxes, the IRS must, among other things, determine taxpayers' actual income, credits and deductions.   To accomplish this mission, the IRS used, among other means, tax returns filed pursuant to the tax laws of the United States, as set forth in Title 26 of the United States Code.   In general, all domestic corporations in existence for any part of a tax year must file an income tax return for that year, whether or not they have any taxable income.   A corporation generally must file with the IRS a United States Corporation Income Tax Return, Form 1120 ("Form 1120"), or a United States

---

[1]      The relevant SINGH Entities include: Quinn Restaurant Corp. d/b/a Water's Edge (the "Water's Edge"); Raj & Raj Realty Ltd d/b/a H.R. Singletons ("H.R. Singletons"); S.R.B. Convention & Catering Corp. d/b/a Woodlands Restaurant; BRS Rest Inc. d/b/a Thom Thom; SRB Concession Inc. d/b/a Tobay Beach Concessions; H&R Convention and Catering Corp. d/b/a Poco Loco; and RBS Restaurant, Inc. d/b/a Rub BBQ/Fuego Picante.

Income Tax Return for an S Corporation, Form 1120S ("Form 1120S"), to report its gross

receipts, income, gains, losses, deductions, credits, and income tax liabilities.

9.     To oversee the books and records of the SINGH Entities, SINGH

employed an individual whose identity is known to the Grand Jury ("Co-Conspirator #1").   At

SINGH's direction, Co-Conspirator #1 did not record the SINGH Entities' cash sales as gross

receipts in the books and records for the SINGH Entities.   Because the profits of the SINGH

Entities flowed through to SINGH as their owner, failing to properly report the gross receipts

of the SINGH Entities on their respective Forms 1120 and 1120S enabled SINGH to falsely

under-report his own income on his personal income tax returns.   For tax years 2009 and

2012, SINGH concealed approximately $2,000,000 in gross receipts earned by two SINGH

Entities incorporated as C Corporations and $8,000,000 in gross receipts earned by five

SINGH Entities incorporated as S Corporations, for a total of approximately $10,000,000 in

unreported gross receipts.

B.     Under-Reporting of Payroll

10.     The Federal Insurance Contributions Act ("FICA") required employees

and employers to pay taxes on all wages employees received and defined wages to include "all

remuneration for employment."   The federal government used such taxes to fund the Social

Security and Medicare programs that provide benefits for retirees and the disabled, among

other things.   As the owner and operator of the SINGH Entities, SINGH was required to

collect, truthfully account for, and pay over to the IRS FICA taxes that were due and owing.

Specifically, SINGH was legally required to withhold federal income taxes and FICA taxes

from SINGH Entities employees' wages, and was legally obligated to pay the federal

government a matching amount of FICA as well. Along with these obligations, SINGH was
required to file an Employer's Quarterly Federal Tax Return ("Form 941") with the IRS
accurately reporting the wages, tips and other compensation that the SINGH Entities'
employees received, as well as the total amount of income and FICA taxes withheld from its
employees' wages.

11.     At various times from 2010 through 2014, SINGH used two payroll
processing companies – AccuData Payroll and Valiant Solutions, Inc. (collectively, the
"Payroll Processing Companies") – to manage the payroll for the relevant SINGH Entities.
Among other things, based on the data supplied by SINGH and by others at SINGH's
direction, the Payroll Processing Companies calculated and withheld federal and state taxes
from the SINGH Entities' employees' wages.

12.     In or about and between 2010 and 2014, SINGH did not report to federal
tax authorities a significant portion of the wages paid to employees of the SINGH Entities (the
"Off the Books Wages"). Nearly all SINGH Entities' employees received Off the Books
Wages. Many such employees received two checks: one check from the Payroll Processing
Companies with payroll withholdings, and a second check from SINGH and/or the SINGH
Entities without any withholdings. Further, a handful of employees received their entire
bi-weekly pay off the books, i.e., through checks from SINGH and/or the SINGH Entities
without any withholdings.[2]  SINGH maintained electronic spreadsheets detailing the true
payroll information pertaining to the SINGH Entities, which included the Off the Books

---

[2]       Generally, SINGH's employees were paid bi-weekly; however, throughout the
relevant period of time, there were a few occasions where employees were paid on a weekly
basis.

6

Wages (the "Second Set of Payroll Records"). SINGH concealed the Second Set of Payroll Records from the Payroll Processing Companies, among others. SINGH employed an individual whose identity is known to the Grand Jury ("Co-Conspirator #2") who oversaw the payroll, including maintaining the Second Set of Payroll Records at SINGH's direction.

13.     In order to calculate and report federal payroll taxes (a process that involved filing quarterly Forms 941 and preparing annual IRS Forms W-2, which calculated and recorded the annual wages of individual SINGH Entity employees), the Payroll Processing Companies relied on SINGH to report to them on a weekly basis the names of the employees who had worked during the week in question, the amount of hours those employees worked, and the employees' rate of pay. As part of the fraudulent scheme, SINGH and subordinates acting at his direction did not report the Off the Books Wages paid to the SINGH Entities' employees to the Payroll Processing Companies. Indeed, the Payroll Processing Companies had no record whatsoever of those employees who received the entirety of their pay off the books. By under-reporting employee hours and concealing the existence of some employees – and by concealing the Second Set of Payroll Records – SINGH caused the Payroll Processing Companies to calculate and then report less wages than the SINGH Entities actually paid its employees. From 2010 through 2014, SINGH concealed approximately $7,091,331 in Off the Books Wages from the Payroll Processing Companies.

14.     As a result of SINGH's concealment of the Off the Books Wages and the Second Set of Payroll Records, the Payroll Processing Companies did not accurately report the true amount of wages SINGH paid SINGH Entities' employees on the Form 941 quarterly tax returns filed with the IRS, and did not withhold the proper amount of FICA taxes required

7

under the law. This scheme enabled SINGH to defeat his obligations to withhold and pay over the proper amount of FICA tax due and owing to the federal government.

II.      Obstruction of Justice

15.      On or about June 11, 2014, Special Agents with the Federal Bureau of Investigation ("FBI") served SINGH with a grand jury subpoena for, among other things, any and all corporate and personal records and books relative to the financial transactions of SINGH and the SINGH Entities.

16.      On August 5, 2014, a warrant was issued authorizing FBI Special Agents to search the premises located within the basement offices of 150 Hicksville Road (the "August 5, 2014 Search Warrant"). Later that day, FBI Special Agents executed the August 5, 2014 Search Warrant. During the execution of that search warrant, agents questioned SINGH about the contents of a locked safe located on the premises, and which was subject to the search warrant. SINGH informed agents that he did not have a key to the safe but that the safe contained guns, for which he had permits.

17.      Contrary to SINGH's statements, the safe contained $175,000 in cash. This cash was diverted cash receipts from a TOB beach concession operated by one of the SINGH Entities, and was not recorded in the gross receipts in the company's books and records. Following the execution of the August 5, 2014 Search Warrant, SINGH removed the cash and instructed Co-Conspirator #1 and another SINGH Entity employee to each take a portion of the cash home for "safekeeping." Approximately two to three days later, SINGH instructed Co-Conspirator #1 and the other SINGH employee to return the money to SINGH's wife.

8

III.    The TOB Loan Scheme

18.    In or about and between January 2011 and February 2015, both dates being approximate and inclusive, SINGH, together with others, engaged in a scheme to pay bribes and kickbacks to Co-Conspirator #3, an employee of the TOB whose identity is known to the grand jury, in exchange for Co-Conspirator #3's assistance in obtaining the TOB's guarantee of certain loans that certain SINGH Entities received from a private corporate financing company (the "Lender"), in connection with SINGH's status as a TOB concessionaire (the "TOB Loan Scheme").   Co-Conspirator #3's duties in his work at the TOB included, but were not limited to, negotiating and drafting contracts, leases, and concession agreements such as the agreements described in more detail below.   In part as a result of Co-Conspirator #3's efforts on behalf of the SINGH Entities, the TOB approved amendments to SINGH's concession agreements with the TOB in which the TOB indirectly guaranteed multi-million dollar loans provided to SINGH by the Lender.   Pursuant to these amendments, if SINGH's entities defaulted on the loans, the TOB would be responsible for repaying the entire amount of the loan to the Lender.

19.    Specifically, the TOB guaranteed two loans made by the Lender to two of the SINGH Entities, totaling approximately $20 million.    The first loan ("Loan #1"), which closed on or about November 18, 2011, was a $7,843,138 loan to the SINGH Entity SRB Convention & Catering Corp ("SRBC&C").   The second loan ("Loan #2"), which closed on or about June 22, 2012, was a $12,273,748 loan to SINGH Entity SRB Concession, Inc. ("SRB").   In furtherance of securing Loan #1 and Loan #2 for SINGH, Co-Conspirator #3, among other things, scheduled meetings involving TOB officials and the

Lender, attended meetings on behalf of the TOB with the Lender, and drafted opinion letters
that approved of the TOB indirectly guaranteeing the loans. In furtherance of the negotiation
of Loan #1, Loan #2 and potential additional financing for other SINGH Entities that held
TOB concessions, SINGH, Co-Conspirator #3 and the Lender sent and received interstate
e-mail communications within the Eastern District of New York.

    A.    Loan #1 and Payments to Co-Conspirator #3

    20.    SINGH, through SRBC&C, had a concession agreement with the TOB
to operate a restaurant and catering facility on property owned by the TOB. On or about
November 18, 2011, TOB officials signed an amendment to the concession agreement, which,
in effect, acted as an indirect guarantee of Loan #1. Upon finalizing this amendment, the
Lender agreed to issue Loan #1, which closed and was funded in November 2011.

    21.    Approximately one week after Loan #1 closed, SINGH gave
Co-Conspirator #3 an envelope with five checks, each in the amount of $5,000, for a total of
$25,000; the five checks were each made out to "cash."

    B.    Loan #2 and Payments to Co-Conspirator #3

    22.    Loan #2 was structured in the same fashion as Loan #1. SINGH,
through SRB, had a concession agreement with the TOB to operate the concession stands at
one of the TOB's municipal beaches. On or about June 19, 2012, TOB officials signed an
amendment to the concession agreement, which, in effect, acted as an indirect guarantee of
Loan #2.

23.      Approximately one week after Loan #2 closed, SINGH gave

Co-Conspirator #3 a second cash payment: another envelope with five more checks, each in

the amount of $5,000, for a total of $25,000; the five checks were each made out to "cash."

24.      In addition, SINGH paid for Co-Conspirator #3 and a relative of

Co-Conspirator #3 to travel to Asia from July 21, 2012 through July 29, 2012, including all

transportation and hotel expenses.

C.      Financing for Additional TOB Beaches Concessions

25.      In or about and between late 2012 and 2013, SINGH entered into a

contract with the TOB to run the concessions at two additional TOB municipal beaches

through SINGH Entities.  SINGH sought a loan of approximately $12 million from the

Lender for improvements to be made to the facilities located at those two beaches.   In

furtherance of SINGH's attempt to obtain this financing from the Lender, Co-Conspirator #3,

among other things, arranged for meetings between the Lender and other TOB officials.   The

Lender did not ultimately extend this loan to SINGH or any of the SINGH Entities.

26.      In or about September 2012, SINGH began to give Co-Conspirator #3

cash, on a monthly basis, to pay for Co-Conspirator #3's lease of a BMW automobile.   The

total amount of the lease was $36,000.  SINGH continued these payments to

Co-Conspirator #3 through February 2015.

11

IV.    The FEMA Fraud Scheme

27.    The Federal Emergency Management Agency ("FEMA") was an agency of the United States government within the Department of Homeland Security ("DHS"). Following Hurricane Sandy, which made landfall in New York on or about October 29, 2012, a Presidential Disaster Declaration for the State of New York (FEMA-4085-DR) was made, effective October 30, 2012, under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5207 (the "Stafford Act").

28.    In or about and between October 2012 and January 2015, SINGH and Co-Conspirator #1 engaged in a scheme to fraudulently obtain federal disaster relief funds by filing false and fraudulent documents with FEMA.   For example, SINGH prepared and caused the preparation of false and fraudulent invoices that claimed that the Water's Edge, which operated a restaurant in Long Island City, New York, suffered losses following Hurricane Sandy.   The false and fraudulent invoices inflated the amount of actual losses suffered as a result of the storm, often by double or triple the amount of actual losses.   In addition, SINGH submitted or caused to be submitted to FEMA fraudulent receipts from vendors that inflated the value of the building's contents.   Based on false and fraudulent documents SINGH submitted or caused to be submitted to FEMA, SINGH received approximately $950,000 in disaster relief funds from FEMA for purported damage to the building in which the Water's Edge operated, and the contents of that building.

## COUNT ONE
### (Conspiracy to Defraud the United States)

29.     The allegations set forth in paragraphs 1 through 28 of this Indictment

are realleged and incorporated as if fully set forth in this paragraph.

30.     In or about and between 2009 and 2014, within the Eastern District of

New York and elsewhere, the defendant HARENDRA SINGH, also known as "H. Singh,"

together with others, did knowingly and willfully conspire to defraud the United States by

impeding, impairing, obstructing and defeating the lawful governmental functions of the IRS,

in the ascertainment, computation, assessment, and collection of revenue, specifically, by

under-reporting gross receipts and payroll taxes.

### MANNER AND MEANS

31.     The manner and means by which the conspiracy was sought to be

accomplished included, among others, the following:

a.     under-reporting gross receipts from the SINGH Entities,

including but not limited to, by diverting cash proceeds from SINGH Entities corporate books

and records;

b.     filing, and causing to be filed, false Forms 1120 and Forms

1120S with the IRS that under-reported gross receipts;

c.     paying, and causing the payment of, the Off the Books Wages to

SINGH Entities' employees; and

13

       d.     transmitting, and causing the transmission of, false information regarding SINGH Entities employee wages to the Payroll Processing Companies, resulting in the preparation of false and fraudulent IRS Forms 941 and W-2 that were submitted to the IRS;

OVERT ACTS

       a.     On or about October 4, 2010, SINGH filed a Form 1120S on behalf of H.R. Singletons, under the penalty of perjury, for the tax year 2009, which tax return was false insofar as it under-reported gross receipts for H.R. Singletons;

       b.     On or about October 11, 2010, SINGH filed a Form 1120 on behalf of the Water's Edge, under the penalty of perjury, for the tax year 2009, which tax return was false insofar as it under-reported gross receipts for the Water's Edge;

       c.     On or about October 7, 2013, SINGH filed a Form 1120 on behalf of the Water's Edge, under the penalty of perjury, for the tax year 2012, which tax return was false insofar as it under-reported gross receipts for the Water's Edge;

       d.     On or about October 7, 2013, SINGH filed a Form 1120S on behalf of H.R. Singletons, under the penalty of perjury, for the tax year 2012, which tax return was false insofar as it under-reported gross receipts for H.R. Singletons;

       e.     On or about July 30, 2010, SINGH caused to be filed a Form 941 on behalf of H.R. Singletons, under penalty of perjury, for the payroll quarter of 2010, which tax return was false insofar as it under-reported wages;

       f.     On or about July 30, 2011, SINGH caused to be filed a Form 941 on behalf of H.R. Singletons, under penalty of perjury, for the payroll quarter of 2011, which tax return was false insofar as it under-reported wages;

g.      On or about July 30, 2012, SINGH caused to be filed a Form 941 on behalf of H.R. Singletons, under penalty of perjury, for the payroll quarter of 2012, which tax return was false insofar as it under-reported wages;

h.      On or about July 30, 2013, SINGH caused to be filed a Form 941 on behalf of H.R. Singletons, under penalty of perjury, for the payroll quarter of 2013, which tax return was false insofar as it under-reported wages;

i.      On or about July 30, 2014, SINGH caused to be filed a Form 941 on behalf of H.R. Singletons, under penalty of perjury, for the payroll quarter of 2014, which tax return was false insofar as it under-reported wages.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
### (Obstructing and Impeding the Due Administration of the Internal Revenue Laws)

32.     The allegations set forth in paragraphs 1 through 28 of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

33.     In or about and between 2009 and 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HARENDRA SINGH, also known as "H. Singh," together with others, did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws of the United States through various means and methods, including among others, the following:

a.      filing with the IRS false Forms 1120S under the penalty of perjury for the tax year 2009, which tax returns were false insofar as they under-reported gross receipts earned by five SINGH Entities incorporated as S Corporations;

b.      filing with the IRS false Forms 1120 under the penalty of perjury for the tax year 2009, which tax returns were false insofar as they under-reported gross receipts earned by two SINGH Entities incorporated as C Corporations;

c.      filing with the IRS false Forms 1120S under the penalty of perjury for the tax year 2012, which tax returns were false insofar as they under-reported gross receipts earned by five SINGH Entities incorporated as S Corporations;

d.      filing with the IRS false Forms 1120 under the penalty of perjury for the tax year 2012, which tax returns were false insofar as they under-reported gross receipts earned by two SINGH Entities incorporated as C Corporations;

e.      paying, and causing others to pay, the Off the Books Wages;

f.      reporting, and directing others to report, false payroll information to the Payroll Processing Companies, specifically, payroll figures that did not include the Off the Books Wages paid to SINGH Entities employees;

g.      causing to be prepared false and fraudulent quarterly Forms 941 that were submitted to the IRS on behalf of various SINGH Entities that under-reported employee wages; and

h.      causing to be prepared false and fraudulent IRS Forms W-2 submitted to the IRS on behalf of SINGH Entities employees for the tax years 2010 through 2014, in which employee wages were under-reported.

(Title 26, United States Code, Section 7212(a); Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT THREE
(Honest Services Wire Fraud Conspiracy – TOB Loan Scheme)

34.     The allegations set forth in paragraphs 1 through 28 of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

35.     In or about and between January 2011 and February 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HARENDRA SINGH, also known as "H. Singh," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud and deprive the citizens of the TOB and the government of the TOB of their intangible right to the honest services of Co-Conspirator #3 through bribery and kickbacks, to wit: the TOB Loan Scheme, and for the purpose of executing such scheme and artifice and attempting to do so, to transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNTS FOUR THROUGH EIGHT
(Honest Services Wire Fraud – TOB Loan Scheme)

36.     The allegations set forth in paragraphs 1 through 29 of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

37.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant HARENDRA SINGH, also known as "H. Singh," together with others, did knowingly and intentionally devise a scheme and artifice to defraud and deprive the citizens of the TOB and the government of the TOB of their intangible right to the

honest services of Co-Conspirator #3 through bribery and kickbacks, to wit: the TOB Loan

Scheme; and for the purpose of executing such scheme and artifice, the defendant

HARENDRA SINGH, also known as "H. Singh," together with others, transmitted and caused

to be transmitted by means of wire communication in interstate commerce, writings, signs,

signals, pictures and sounds as identified below:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 4 | 11/2/11 | Interstate email transmission from SINGH to an individual involved in the negotiation of Loan #1 and Loan #2, whose identity is known to the Grand Jury (the "Individual") |
| 5 | 11/2/11 | Interstate email transmission from SINGH to the Individual, which attached a draft document in connection with Loan #1 |
| 6 | 11/4/11 | Interstate email transmission from SINGH to the Individual, which attached an opinion letter prepared in connection with Loan #1 |
| 7 | 11/4/11 | Interstate email transmission from SINGH to the Individual, which attached an opinion letter prepared in connection with Loan #1 |
| 8 | 5/25/12 | Interstate email transmission from SINGH to the Individual, which attached an opinion letter prepared in connection with Loan #2 |

(Title 18, United States Code, Sections 1343, 1346, 2 and 3551 et seq.)

COUNT NINE
(Bribery – TOB Loan Scheme)

38.    The allegations set forth in paragraphs 1 through 28 of this Indictment

are realleged and incorporated as if fully set forth in this paragraph.

39.    In or about and between January 2011 and February 2015, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

18

defendant HARENDRA SINGH, also known as "H. Singh," together with others, did

knowingly, intentionally and corruptly give, offer and agree to give one or more things of

value, to wit: cash payments and payments for travel expenses, to Co-Conspirator #3, an agent

of a local government, to wit: the TOB, which government received in excess of $10,000 under

one or more Federal programs involving grants, contracts, subsidies, loans, guarantees,

insurance and other forms of Federal assistance in one or more one-year periods, with intent to

influence and reward Co-Conspirator #3 in connection with business and one or more

transactions and series of transactions of the TOB involving things of value of $5,000 or more.

(Title 18, United States Code, Sections 666(a)(2), 2 and 3551 et seq.)

## COUNT TEN
### (Disaster Fraud)

40.     The allegations set forth in paragraphs 1 through 28 of this Indictment

are reallaged and incorporated as if fully set forth in this paragraph.

41.     On or about and between October 2012 and January 2015, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant HARENDRA SINGH, also known as "H. Singh," together with others, knowingly

and intentionally made materially false, fictitious, and fraudulent statements and

representations to FEMA, in applications for benefits authorized, transported, transmitted,

transferred, disbursed, and paid with FEMA funds in connection with the Presidential Disaster

Declaration for the State of New York (FEMA-4085-DR), effective October 30, 2012, a

disaster declaration having been made under the Stafford Act, to wit: the defendant knowingly

and fraudulently submitted and caused to be submitted to FEMA invoices and receipts that he

claimed accurately reported losses suffered as a result of Hurricane Sandy by businesses he owned and operated; when, as he then and there well knew and believed, these invoices and receipts overstated such losses.

(Title 18, United States Code, Sections 1040(a)(2), (b)(3), 2 and 3551 et seq.)

### COUNT ELEVEN
(Conspiracy to Defraud the United States — Disaster Relief Claims)

42.     The allegations set forth in paragraphs 1 through 28 of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

43.     In or about and between October 2012 and January 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HARENDRA SINGH, also known as "H. Singh," together with others, did knowingly and intentionally conspire to defraud the United States and a department and agency thereof, to wit: FEMA, by obtaining and aiding to obtain the payment and allowance of false, fictitious, and fraudulent claims.

(Title 18, United States Code, Sections 286 and 3551 et seq.)

### COUNT TWELVE
(Evidence Tampering)

44.     The allegations set forth in paragraphs 1 through 28 of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

45.     On or about August 5, 2014, within the Eastern District of New York, the defendant HARENDRA SINGH, also known as "H. Singh," together with others, did knowingly, intentionally and corruptly conceal, and attempt to conceal, one or more records, documents and other objects, to wit: $175,000 in United States currency, with the intent to

impair the object's availability for use in an official proceeding, to wit: a grand jury

investigation in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(1), 2 and 3551 et seq.)

### COUNT THIRTEEN
(Obstruction of Justice)

46.     The allegations set forth in paragraphs 1 through 28 of this Indictment

are realleged and incorporated as if fully set forth in this paragraph.

47.     On or about August 5, 2014, within the Eastern District of New York, the

defendant HARENDRA SINGH, also known as "H. Singh," together with others, did

knowingly, intentionally and corruptly obstruct and impede, and attempt to obstruct and

impede an official proceeding, to wit: a federal grand jury investigation in the Eastern District

of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS THREE THROUGH EIGHT

48.     The United States hereby gives notice to the defendant that, upon his

conviction of any of the offenses charged in Counts Three through Eight, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(A), which

requires any person convicted of such offenses to forfeit any property constituting or derived

from proceeds obtained directly or indirectly as a result of such offenses, including but not

limited to:

a.     The real property located at 310 Laurel Lane, Syosset,

New York 11791; and

21

          b.      The real property located at 14 Fox Lane, Locust Valley,

New York 11560.

      49.     If any of the above-described forfeitable property, as a result of any act

or omission by the defendant:

          a.      cannot be located upon the exercise of due diligence;

          b.      has been transferred or sold to, or deposited with, a third party;

          c.      has been placed beyond the jurisdiction of the Court;

          d.      has been substantially diminished in value; or

          e.      has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the forfeitable property

described in this forfeiture allegation.

      (Title 18, United States Code, Section 982(a)(2)(A); Title 21, United States

Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT NINE

      50.     The United States hereby gives notice to the defendant that, upon his

conviction of the offense charged in Count Nine, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

Code, Section 2461(c), of any property, real or personal, constituting or derived from proceeds

traceable to such offense, including but not limited to:

           a.      The real property located at 310 Laurel Lane, Syosset,

New York 11791; and

           b.      The real property located at 14 Fox Lane, Locust Valley, New

York 11560.

      51.      If any of the above-described forfeitable property, as a result of any act

or omission by the defendant:

           a.      cannot be located upon the exercise of due diligence;

           b.      has been transferred or sold to, or deposited with, a third party;

           c.      has been placed beyond the jurisdiction of the Court;

           d.      has been substantially diminished in value; or

           e.      has been commingled with other property which cannot be

divided without difficulty;

23

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

KELLY T. CURRIE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2014R00337
FORM DBD-34
JUN. 85

No. _____

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT of NEW YORK

### CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

*HARENDRA SINGH, also known as "H. Singh,"*

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 286, 371, 666(a)(2), 981(a)(1)(C), 982(a)(2)(A), 1040(a)(2),
1040(b)(3), 1343, 1346, 1349, 1512(c)(1), 1512(c)(2), 2 and 3551;
T. 21, U.S.C., § 853(p); T. 26, U.S.C., § 7212(a); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

_____

**Catherine M. Mirabile, Raymond A. Tierney, Lara Treinis Gatz**
**Assistant U.S. Attorneys**